IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

COMMONWEALTH OF VIRGINIA, et al.,

    Plaintiffs,

v.

SUPPORTKIDS SERVICES, INC.

    Defendant.

Action No. 3:10–CV–73

# MEMORANDUM OPINION

THIS MATTER is before the Court on the Commonwealth of Virginia's Motion to Remand (Dock. No. 11). Defendant Supportkids Services opposes the remand and has filed a Motion to Strike Plaintiff's Evidence in Support of its Motion to Remand (Dock. No. 21). For the reasons stated below, the Court GRANTS the Commonwealth's Motion and DENIES AS MOOT Supportkids' Motion. Supportkids' Motion to Dismiss (Dock. No. 5) is also DENIED AS MOOT.

## I. BACKGROUND

Defendant Supportkids Services, Inc. ("Supportkids"), a Texas company, is the successor in interest to another Texas company called Supportkids, Inc., which previously did business as Child Support Enforcement ("Old Supportkids"). Supportkids and Old Supportkids are private child support collection companies who seek out individuals who are in violation of child support obligations in order to recover that money for the beneficiaries in exchange for a portion of the child support payment. In a 2008 lawsuit, the Commonwealth sued Old Supportkids for violating Virginia's child support collection laws. Old Supportkids removed the case to federal court on the basis of federal question

1

jurisdiction, however, this Court found that it lacked subject matter jurisdiction over the dispute and remanded the case to the Circuit Court for the City of Richmond. <u>Commonwealth of Virginia, et al. v. Supportkids, Inc., d/b/a/ Child Support Enforcement</u>, 08-cv-153, 2008 WL 1840736, at *1 (E.D. Va. Apr. 23, 2008). After the Commonwealth obtained a preliminary injunction in state court barring Old Supportkids from engaging in its unlawful collection activities, Old Supportkids changed its name and arranged for Supportkids Services to take over its offices, website, and some collection accounts. Old Supportkids thereafter ceased operations and filed for bankruptcy.

In November 2009, in the Richmond Circuit Court, Plaintiff Commonwealth of Virginia by Governor of Virginia Timothy Kaine, Virginia Attorney General Williams Mims, and its Department of Social Services' Division of Child Support Enforcement brought suit against Supportkids in order to hold it responsible as the successor-in-interest to Old Supportkids. The Commonwealth's Complaint asserts state law claims for conversion, fraud, unjust enrichment, the unauthorized practice of law, and violations of Virginia's Consumer Protection Act and child support collection laws. The Commonwealth seeks a declaration that Supportkids' collection practices are unlawful under Virginia law, a constructive trust on funds obtained in the name of certain children listed in Exhibits A and B of the Complaint, a temporary and permanent injunction forbidding Supportkids from engaging in its current collection practices in Virginia, monetary damages for obtaining money that ought to be paid to the Commonwealth as reimbursement for child support payments already made, and civil penalties.

In February 2010, Supportkids removed the case to this Court, asserting diversity of

citizenship under 28 U.S.C. § 1332 as the basis for subject matter jurisdiction.[1] Although the Commonwealth brought the suit, Supportkids alleged that the real parties in interest are the children on whose behalf the Commonwealth seeks to recover child support payments. Because Supportkids says all of those individuals are citizens of Virginia and the total amount sought on their behalf is more than $10,000,000, it concludes there is complete diversity and a sufficient amount in controversy thereby satisfying the requirements of § 1332.

The Commonwealth now seeks a remand on the grounds that this Court lacks subject matter jurisdiction. Even if the Court were to find subject matter jurisdiction, the Commonwealth asserts that the Court should abstain under the principles stated in Burford v. Sun Oil Co., 319 U.S. 315 (1943). For its part, Supportkids opposes the remand as well as the use of a declaration filed by the Commonwealth in support of its motion to remand.

## II. DISCUSSION

Following removal from state court, a motion to remand may be made pursuant to 28 U.S.C. § 1447, which states "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded . . . . The State court may thereupon proceed with such case." It is well-settled that, on a motion to remand, the removing party bears the burden of establishing jurisdiction. See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). Furthermore, the court must strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court. See id.

---

[1] Initially Supportkids also asserted bankruptcy law as a basis for subject matter jurisdiction. It has since withdrawn that contention.

A defendant may remove a case based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441. A district court has original jurisdiction over matters between citizens of different states when the amount in controversy exceeds $75,000. See id. § 1332(a)(1). When a defendant removes a case from state court based upon diversity jurisdiction, the defendant must prove complete diversity. Diversity of citizenship is determined at the time an action is commenced. See Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991).

In this case, the Commonwealth first argues that diversity jurisdiction is lacking because a state is not a citizen under the diversity statute. Supportkids responds that the Commonwealth is not the real party in interest because the private citizens on whose behalf Virginia is suing are the ones that stand to benefit from the suit. For starters, both parties agree that under well-settled law a state is not considered a "citizen" for purposes of 28 U.S.C. § 1332 and therefore there is no diversity of citizenship as long as it is considered a real party in interest in the controversy. See Postal Tel. Cable Co. v. Alabama, 155 U.S. 482, 487 (1894). The parties also agree that when the requested relief is solely for private benefit, the state is not a real party. Where the parties disagree, however, is how to evaluate a "two hats" situation where the state itself may have a financial and administrative stake in the action in addition to the stake of individual citizens.

Thus, before the Court can evaluate what stake the Commonwealth actually has in this suit, the Court must first establish the proper test for determining when a state is a real party in interest when it brings a parens patriae action that may benefit both the state and specific citizens of that state. These "two hats" cases have engendered two lines of cases, both of which are on display in the parties' arguments here. The first line of cases, first articulated

by the Supreme Court and the one espoused by Supportkids, establishes that a state, as a plaintiff, is the real party in interest for diversity purposes "when the relief sought is that which <u>enures to it alone</u>, and in its favor the judgment or decree, if for the plaintiff, will effectively operate." <u>Mo., Kan. & Tex. Ry. Co. v. Mo. R.R. & Warehouse Comm'r</u>, 183 U.S. 53, 59 (1901) (emphasis added). Read narrowly, this language suggests that only the state can benefit from the relief sought; otherwise, it is not the real party in interest. See <u>Illinois v. SDS W. Corp.</u>, 640 F. Supp. 2d 1047, 1052 (C.D. Ill. 2009). This approach has some, though limited, support. (Supportkids' Mem. in Opp. 7-8 (citing <u>Connecticut v. Levi Strauss & Co.</u>, 471 F. Supp. 363, 370-72 (D. Conn. 1979)).[2]

The Commonwealth notes, however, that most courts have rejected that approach in "two hats" cases by looking to the complaint as a whole. <u>See</u>, e.g., <u>Illinois v. SDS W. Corp.</u>, 640 F. Supp. 2d 1047, 1052-53 (C.D. Ill. 2009) (holding that Illinois, who brought a consumer fraud action, was real party in interest because it had a "substantial stake" in the injunctive relief and civil penalties "regardless of its concurrent and subsidiary pursuit of relief on behalf of certain individual citizens"); <u>Ohio ex rel. Dann v. Citibank (South Dakota), N.A.</u>, 07-cv-1149, 2008 WL 1990363, at *3 (S.D. Ohio May 1, 2008) (holding that Ohio, who brought a consumer fraud action, was real party in interest because Ohio sought civil penalties and injunctive relief in addition to relief for harmed individuals); <u>Ky. ex rel. Stumbo v. Marathon Petroleum Co., LLC</u>, 07-cv-30, 2007 WL 2900461, at *4-5 (E.D. Ky. Oct. 3, 2007) (holding that Kentucky, who brought price gouging action, was real party in interest even though it sought

---

[2] Supportkids also cites <u>Louisiana v. Allstate Ins. Co.</u>, 536 F.3d 418 (5th Cir. 2008) as support for its position. Supportkids is mistaken for two glaring reasons. First, the state plaintiff in that case brought the suit under the Class Action Fairness Act, which requires only minimal, not complete, diversity. Second, the court in that case actually found that Louisiana was a real party in interest.

5

restitution for specific consumers because "[t]he declaration, injunction, and civil penalties will benefit all Kentucky consumers not just a particular set of consumers"); Hood ex rel. Miss. v. Microsoft Corp., 428 F. Supp. 2d 537, 546 (S.D. Miss. 2005) (holding that Mississippi was real party in interest even though it also sought to recover damages for private parties because it sought injunctive relief that was "aimed at securing an honest marketplace"); Wisconsin v. Abbott Labs., 341 F. Supp. 2d 1057, 1063 (W.D. Wisc. 2004) (holding that Wisconsin, who brought antitrust action against drug manufactures that allegedly inflated wholesale prices, was real party in interest even though it also sought damages for specific individuals because it sought injunctive relief that was "aimed at securing an honest marketplace, promoting proper business practices, protecting Wisconsin consumers and advancing plaintiff's interest in the economic well-being of its residents"); West Virginia v. Morgan Stanley & Co., 747 F. Supp. 332, 339 (S.D. W. Va. 1990) (holding that West Virginia, who brought a securities fraud action, was real party in interest even though there may have been other real parties in interest) ; Mo. ex rel. Webster v. Freedom Fin. Corp., 727 F. Supp. 1313, 1317 (W.D. Mo. 1989) (holding that Missouri was real party in interest even though consumer fraud action would also benefit specific individuals); New York ex rel. Abrams v. Gen. Motors Corp., 547 F. Supp. 703, 707 (S.D.N.Y. 1982) (holding that New York, who brought consumer fraud action, was real party in interest even though individual consumers would benefit because state sought injunctive relief that would benefit its quasi-sovereign interest in securing an honest marketplace). Thus, the test should not be whether the state alone will benefit, but whether the state has "'a substantial stake in the outcome of the case.'" Abbott Labs., 341 F. Supp. 2d at 1061 (quoting Morgan Stanley, 747 F. Supp. at 337).

Ultimately, of course, it is the Fourth Circuit's take on these two views that controls

this dispute. Citing Blease v. Safety Transit Co., 50 F.2d 852 (4th Cir. 1931) and Miller v. Perry, 456 F.2d 63 (4th Cir. 1972), Supportkids claims that its preferred approach has been adopted by the Fourth Circuit, which has allegedly held that the citizenship of the beneficiaries of the action controls the diversity analysis. Miller, however, is inapplicable here as that case did not involve a state as a party, but instead was a suit involving two private parties. And Blease simply stands for the proposition that a general governmental interest in having a party follow the law does not give the state a real interest in the litigation for diversity purposes. These cases do not confront the "two hats" situation present here. As one district court has noted, the Fourth Circuit has not actually had the opportunity to rule on this issue. See W. Va. ex rel. McGraw v. Minnesota Mining and Mfg. Co., 354 F. Supp. 2d 660, 672 (S.D. W. Va. 2005).

Most courts, including district courts in this circuit, analyze real party in interest questions by examining the state's interest in a lawsuit as a whole. Supportkids' approach is too narrow and has been repeatedly rejected by federal courts across the country. The appropriate question is whether the complaint, viewed as a whole, gives the state a substantial stake in the outcome of the case. Applying that analysis here, it is clear that the Commonwealth has a substantial stake.

Much of the monetary relief sought is for funds owed the Commonwealth as reimbursement for public support benefits paid to children whose child support payments were in arrears. The Commonwealth also seeks civil penalties and declaratory and injunctive relief that is aimed at stopping the defendant's business practices. State law charges the Department of Social Services with administering the child support system, including how wages may be garnished, how payments are monitored, and to whom

payments will be disbursed. Supportkids' actions have disrupted this system, and thus, the Commonwealth has an interest in remedying that damage. While the Commonwealth does also seek restitution on behalf of particular individuals, this is only one aspect of the wide-ranging relief sought, a substantial portion of which will benefit all child support beneficiaries in the Commonwealth. Viewing the complaint as a whole, the state is a real party in interest in this matter. Accordingly, diversity of citizenship is lacking and the case will be remanded to state court.

Even if the Court determined that it had subject matter jurisdiction over this matter, the Court would still decline jurisdiction based on the abstention doctrine articulated in Burford v. Sun Oil, 319 U.S. 315 (1943). The Supreme Court has offered the following "distilled" formulation as to when lower courts should abstain under Burford:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989) (citing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976)). This case involves Virginia's law and policy of domestic-relations, including issues such as whether, under Virginia law, a custodial parent may assign support payments to a third party, a private collection agency may seek payment from a non-custodial parent's employer without attaching a valid wage withholding order, and a private collection agency may direct a non-custodial parent's employer to bypass the Division of Child Support Enforcement and send withheld wages directly to the private collection agency. Because the Commonwealth is

8

seeking injunctive relief, this Court would be sitting in equity if it decided to grapple with these important questions of state law—questions that certainly transcend the results in this specific case. Thus, if the Court were to find that it had subject matter jurisdiction over this matter, which it does not, <u>Burford</u> abstention would be available and appropriate and the case would still be remanded.[3]

### III. CONCLUSION

For the above stated reasons, the Court GRANTS the Commonwealth's Motion and DENIES AS MOOT Supportkids' Motion.

Let the Clerk send a copy of this memorandum to all counsel of record. An appropriate order will issue.

It is SO ORDERED.

_____/s/_____<br>
James R. Spencer<br>
Chief United States District Judge

ENTERED this   29th    day March 2010

---

[3] Because the Court finds that the Commonwealth is a real party in interest, the parties' additional arguments concerning complete diversity, the evidence used to determine citizenship, and the amount in controversy need not be addressed.